UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LEVI STRAUSS & CO.,

                    Plaintiff,

        v.

RICHARD I SPIECE SALES CO., INC.,

                    Defendant.

Case No.  5:16-cv-06344-EJD

**ORDER GRANTING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION**

Re: Dkt. No. 33

Plaintiff Levi Strauss & Co. ("Plaintiff") moves for entry of default judgment against Defendant Richard I Spiece Sales Co., Inc. ("Defendant").  Plaintiff seeks injunctive relief stemming from alleged violations of trademark infringement, unfair competition, and dilution, under federal and California laws.  Dkt. No. 33 ("Mot.").  The Court has considered the moving papers of Plaintiff's counsel and for the reasons discussed below, the motion is GRANTED.

## I.    BACKGROUND[1]

Plaintiff brought this case asserting causes of action for (1) federal trademark infringement under 15 U.S.C. §§ 1114-1117; Lanham Act § 32, (2) federal unfair competition under Lanham Act § 43(a), (3) federal dilution of famous marks under 15 U.S.C. § 1125(c); Lanham Act § 43(c),

---

[1]     The background is a summary of the allegations in the First Amended Complaint (Dkt. No. 25-1) that are relevant to the Motion for Default Judgment.

(4) California trademark infringement and dilution under Cal. Bus. & Prof. Code §§ 14245, 14247, and 14250, and (5) California unfair competition under Cal. Bus. & Prof. Code § 17200.

Plaintiff is known for its famous denim and apparel. Dkt. No. 25-1, First Amended Complaint at 4 ("FAC"). The first federally registered trademark at issue in this action is Plaintiff's "Tab Trademark," which consists "of a textile marker or other material sewn into one of the regular structural seams of the garment." FAC ¶ 8. While this LEVI'S® marker is located on other clothing, it has been displayed on the rear pocket of its pants since 1936. FAC ¶ 9. The purpose of this marker was to provide a distinct sight identification of Plaintiff's products in order to eliminate any confusion to customers. *Id*. Plaintiff's Tab Trademark as depicted:



The second is Plaintiff's 500 Series trademarks. FAC ¶ 13; Exhibits C, D. These trademarks include 501®, 505®, 517®, and 569®, among other marks that consist of three digits starting with a "5." FAC ¶ 13. Plaintiff "has used the 500 Series trademarks continuously" with beginning dates ranging from 1983–1998 "in interstate commerce on jeans and pants" and through "use and promotion of the 500 Series trademarks together, the public recognizes [Levi Strauss & Co.] as the source of all apparel products falling within any 500 series." FAC ¶ 13. Plaintiff's trademarks are famous and recognized around the world. FAC ¶¶ 11, 15. Plaintiff's 500 Series

Trademark as depicted:



Plaintiff has spent a great deal of money, time, and effort developing the goodwill and reputation for the millions of products sold around the world. FAC ¶ 6. The Tab Trademark and 500 Series Trademarks as depicted together on Plaintiff's jeans:



Defendant, on information and belief, is an Indiana corporation that manufactures, distributes and/or sells jeans under the brand name Denim Express. FAC ¶ 5. These jeans are sold throughout the United States including within this district. *Id*. Defendant's jeans bear a tab on the pocket similar to that of Plaintiff's Tab Trademark. FAC ¶ 18. Defendant's jeans also

United States District Court
Northern District of California

include three-digit marks on its jeans such as 701 and 705, which are also highly similar to Plaintiff's 500 Series trademarks. *Id.* Plaintiff has contacted Defendant multiple times and alleges that "[u]nless Defendant is restrained by this Court, it will continue and/or expand its illegal activities and otherwise continue to cause great and irreparable damage and injury" to Plaintiff. FAC ¶ 22. Defendant has not otherwise ceased its commercial activity or responded Plaintiff's Complaint.

## II.  LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (internal citations omitted). The court must first determine the "adequacy of service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065 at *2 (N.D. Cal. Jan. 2, 2001).

The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment, known commonly as the "*Eitel* factors." They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). When assessing these factors, all factual allegations in the complaint are taken as true, except those with regard to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

## III.  DISCUSSION

### A.  Service of Process

Under the Federal Rules of Civil Procedure, a plaintiff must serve a summons and

complaint on a defendant within ninety days after the complaint is filed. Fed. R. Civ. P. 4(m). When serving a corporation, a plaintiff must also send a copy of the summons and the complaint by registered or certified mail to the corporation. Fed. R. Civ. P. 4(i)(2). Here, Plaintiff timely served the appropriate documents to Thomas Spiece, owner of Defendant Richard I Spiece Sales, Co., Inc. in Wabash, Indiana. Dkt. No. 8. An answer was attempted, but later stricken by the Court. Dkt. Nos. 10, 21. Plaintiff served its First Amended Complaint and Motion for Default Judgment on Defendant by first class mail. Dkt. No. 27. Service of process was adequate.

**B.** *Eitel* **Factors**

The first factor regarding prejudice weighs in favor of Plaintiff. If Plaintiff's application for default judgment were to be denied, it would leave Plaintiff without a remedy because Defendant has refused to litigate this action. Therefore, Plaintiff would be prejudiced if the Court were to deny its application for default judgment. This factor weighs in favor of default judgment. *See J & J Sports Prods, Inc. v. Concepcion*, No. C 10-05092 WHA, 2011 U.S. Dist. LEXIS 60607, 2011 WL 2220101, at *2 (N.D. Cal. June 7, 2011). Thus, the first factor is met.

The second and third factor also weigh in favor of Plaintiff because Plaintiff's substantive claims appear meritorious and sufficiently plead.

i. Trademark Infringement (Claims I, IV)

Plaintiff's primary claim is for federal and California trademark infringement under 15 U.S.C. §§ 1114-1117 (Lanham Act § 32) and Cal. Bus. & Prof. Code §§ 14245, 14247, and 14250 respectively. The Lanham Act requires a plaintiff pursuing a trademark infringement claim to present evidence of a valid mark, that the mark has been used in commerce, and that the defendant's use of the mark is likely to cause confusion, or mistake, or to deceive as to sponsorship, affiliation, or the origin of the goods or services in question. 15 U.S.C. §§ 1114, 1125(a); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). Both California and federal law focus on "the likelihood of confusion as to source or sponsorship." *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981).

Here, Plaintiff has provided evidence of its Tab Trademark. FAC, Ex. A. Plaintiff has used its tab marker on its clothing products continuously in interstate commerce since 1936. Mot. at 3. The famous trademark that is recognized around the world signifies Plaintiff's quality product. *Id*. at 4. Plaintiff began using its famous tab marker prior to Defendant's conduct. Plaintiff has also provided evidence of its 500 Series trademarks. FAC, Ex. C. Plaintiff has used its 500 Series trademarks continuously since 1969. Mot. at 4. The 500 Series trademarks are valid and protectable. *Id*. Lastly, these trademarks are famous and recognized around the world, and were so prior to Defendant's conduct. *Id*.

**Plaintiff's 501 and 517 jeans:**

 

**Defendant's 701 jean:**



**Plaintiff's tab markers:**



**Defendant's tab markers:**



Defendant's use of the similar red back pocket tab and 701/705 labels is confusingly similar to Plaintiff's products. The use of Defendant's marks is likely to deceive consumers as to the origin or the maker of the product. Thus, because Defendant's products are so similar, Plaintiff has a meritorious trademark infringement claim.

    ii.    Unfair Competition (Claims II, IV)

Plaintiff asserts federal and California unfair competition claims against Defendant under

the Lanham Act § 43(a), and Cal. Bus. & Prof. Code § 17200 respectively.

Section 17200 defines unfair competition as "(1) any unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, or misleading advertising or (3) any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Importantly, the test for false designation and false description as defined under the Lanham Act, which is what Plaintiff claims, is identical to unfair competition. Both preclude the use of one's mark that will cause confusion. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) (applying California law).

Here, Defendant has promoted, manufactured, and/or sold jeans that infringe on Plaintiff's trademarks. Defendant's products are similar enough to cause confusion to consumers in distinguishing the differing jeans. Plaintiff mailed Defendant's a cease and desist letter on or around February 1, 2016. FAC ¶ 19. Plaintiff contends that after Defendant received the letter, images from Defendant's website that depicted Defendant's jeans with the infringing back pocket tabs were removed. FAC ¶ 19. Plaintiff contends, on information and belief, that after Defendant received the notice of entry of the Clerk's Entry of Default in this action against Defendant, Defendant introduced a new pair of jeans that included marks 701 and 705, which are very similar to Plaintiff's 500 Series Trademarks on its jeans. Defendant is profiting from marks that infringe on Plaintiff's designs and continue to intentionally sell jeans bearing the similar red back pocket tabs and three-digit labels. The Court finds that Plaintiff has a meritorious claim of unfair competition.

### iii. Trademark Dilution (Claims III, IV)

Plaintiff asserts federal and California claims for dilution of famous marks under the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), Lanham Act § 43(c), and Cal. Bus. & Prof. Code §§ 14245, and 14247 respectively. The Lanham Act protects mark owners from a likelihood of dilution caused by another who adopts an identical or similar mark. 15 U.S.C. § 1125(c). Here, the alleged mark consists of a red cloth folded into a tab marked with

LEVI'S®.  Plaintiff has provided exhibits of both marks.  Defendant's marks are almost identical and are likely to cause dilution of Plaintiff's famous trademarks.

**Plaintiff's denim jeans**     **Defendant's denim jeans**

   

The Lanham Act's protection extends only to marks that are famous. 15 U.S.C. § 1125(c). Plaintiff's marks are recognized in the United States and around the world for its high-quality LEVI'S® jeans.  *Id.*; Mot. at 4.  Both Plaintiff's Tab and 500 Series Trademarks are famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).  FAC ¶ 36.  Levi alleges its marks became famous before Defendant's use.  FAC ¶ 11.

In addition to the requirement of fame, the Lanham Act protects only distinctive marks against dilution. 15 U.S.C. § 1125(c).  Both Plaintiff's Tab and 500 Series Trademarks are distinctive within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).  FAC ¶ 36.  Plaintiff's patent (Reg. No. 577,490) describes the tab marker "of textile material" that is "colored red" and appears "on and affixed permanently to the exterior of the garment in a position that the red tab is visible, while the garment is being worn."  FAC, Ex. A. The same is applied to a black tab (Reg. No. 774,625), a white tab (Reg. No. 775,412), or generally a "small marker or tab affixed to the exterior of the garment at the hip pocket" (Reg. No.

1  1,157,769).  FAC, Ex. A.  Thus, Plaintiff has asserted a meritorious federal and state dilution of

2  famous marks claim.

3         Accordingly, the second and third *Eitel* factors are met.

4         Under the fourth factor—the sum of money at stake—Plaintiff requests injunctive relief.

5  Mot. at 8–9.  A permanent injunction is an appropriate remedy for the irreparable harm caused by

6  continuous and ongoing trademark infringement.  *See, e.g.*, *Sennheiser Elec. Corp. v. Eichler*, No.

7  CV 12-10809 MMM (PLAx), 2013 WL 3811775, at *10 (C.D. Cal. July 19, 2013) citing *Century*

8  *21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180–81 (9th Cir. 1088).

9         A court may enter an injunction to prevent a defendant from continual trademark

10  infringement.  15 U.S.C. 1116(a); 15 U.S.C. 1125(a).  "To obtain permanent injunctive relief, a

11  plaintiff must show (1) that it has suffered an irreparable injury; (2) that remedies available at law,

12  such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

13  balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4)

14  that the public interest would not be disserved by a permanent injunction. . . .  In determining the

15  scope of an injunction, a district court has broad latitude, and it must balance the equities between

16  the parties and give due regard to the public interest."  *California ex rel. Lockyer v. U.S. Dep't of*

17  *Agric.*, 575 F.3d 999, 1019–20 (9th Cir. 2009) (internal quotations and citations omitted).

18         Here, Plaintiff has demonstrated that a permanent injunction is warranted.  First, as

19  previously discussed, Plaintiff has a likelihood of success on its claims.  Second, in taking

20  Plaintiff's allegations as true, Defendant continues to sell denim jeans that directly infringe

21  Plaintiff's patents and are in direct competition with Plaintiff.  Thus, Plaintiff has shown

22  irreparable injury if Defendant is not enjoined.  Third, the balance of hardships tips in favor of

23  Plaintiff.  Plaintiff has used the Tab Trademark continuously since 1936 in interstate commerce on

24  its clothing products.  Plaintiff has sold millions of its products all over the world and has spent a

25  great deal of time, money, and effort in earning its goodwill and reputation for quality products.

26  Restricting Defendant from infringing on Plaintiff's product and otherwise keeping Defendant in

27

28

Case No.: 5:16-cv-06344-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND
PERMANENT INJUNCTION

compliance with the Lanham Act weighs in favor of Plaintiff. Lastly, public interest favors an injunction because restricting trademark infringement helps eliminate confusion and deception of product quality among the public.

As to the fifth factor, there is no dispute of material fact. Indications that there is a dispute of material fact can weigh against entry of default judgment. *See Eitel*, 782 F.2d at 1471–72. Here, Defendants have not disputed any of Plaintiff's contentions because Defendant has failed to respond to either the Complaint or this motion, and all material facts pled in the Complaint are supported or explained by a declaration.

Considering the sixth factor, it is unlikely that default was the result of excusable neglect. Plaintiff filed its Complaint on November 11, 2016 (Dkt. No. 1) and served the summons and Complaint on Defendant on November 15, 2016 (Dkt. No. 8). Mr. Thomas Spiece, owner of Defendant Spiece Sales, exchanged faxes with Plaintiff and acknowledged the Complaint and service. Dkt. No. 33-1, Bricker Decl. Defendant attempted to file an answer on December 27, 2016, past the deadline for a response (Dkt. No. 10) and a declination to proceed before a magistrate (Dkt. No. 11). On April 10, 2017, the Court, recognizing that the answer was filed by an individual Tom Spiece on behalf of Defendant Richard I Spiece Sales Co., Inc. as a pro se litigant, and that a corporate defendant cannot appear in court without an attorney representing it, ordered the answer stricken. Dkt. No. 21. The Court gave Defendant thirty days to retain counsel and respond to the Complaint. *Id.* No response was ever filed. The clerk of the court filed and served an entry of default. Dkt. No. 23. Plaintiff subsequently moved to set aside the default to allow for a filing of its first amended complaint after new facts came to light. Both requests were granted. The FAC was served on Defendant. Dkt. Nos. 25, Ex. 1; 27. Therefore, it appears that Defendant is aware of the judicial proceedings but has chosen not to engage. Thus, it is unlikely that default was the result of excusable neglect.

Finally, the seventh factor supports a default judgment because "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such

as this where defendants refuse to litigate." *J & J Sports Prods., Inc.*, 2011 U.S. Dist. LEXIS 60607, at *5. Plaintiff alleges it has made several attempts to engage with Defendant but has been ignored. Mot. at 5. Plaintiff has filed and served a motion for entry of default with the clerk and a motion for default judgment with the Court. *See* Dkt. Nos. 28, 33. The last and seventh factor also weighs in favor of Plaintiff.

Accordingly, in consideration of the *Eitel* factors and Defendant's blatant disregard for the judicial process, the Court chooses to exercise its discretion in granting default judgment and a permanent injunction against Defendant.

## IV. CONCLUSION AND ORDER

Based on the foregoing, Plaintiff's application for default judgment (Dkt. No. 33) is GRANTED. Judgment shall be entered in favor of Plaintiff and against Defendants. It is hereby ordered and adjudged as follows:

a) Commencing as of the "So Ordered" date of this Judgment and Permanent Injunction, Spiece Sales, its principals, agents, affiliates, employees, officers, directors, servants, privies, successors, and assigns, and all persons acting in concert or participating with it or under its control who receive actual notice of this Order, are hereby permanently enjoined and restrained, directly or indirectly, from doing, authorizing or procuring any persons to do any of the following until such time as this Order is dissolved or modified by further Court order:

   i. Manufacturing, licensing, selling, offering for sale, distributing, importing, exporting, advertising, promoting, or displaying any garment that displays any of the designs and/or designations that is at least as similar to the Tab trademark or 500 Series trademarks (hereinafter collectively the "Prohibited Designs and Designations");

   ii. Applying, now or in the future, for the federal registration of trademarks for any of

the Prohibited Designs and Designations;

    iii.    Licensing or assigning the Denim Express trademark, or the assets or beneficial ownership or control of assets associated with the production of goods under the Denim Express trademark, without disclosing and providing actual notice to the licensee, buyer or assignee of such trademarks or assets;

    iv.    Refusing refunds to any retailer, wholesaler, jobber, distributor or other seller located in the United States or its territories which, upon receiving notice of this Injunction, returns products to Spiece Sales bearing the Prohibited Designs and Designations;

    v.    Assisting, aiding or abetting any person or entity engaging in or performing any act prohibited by this paragraph.

b) This Injunction shall apply throughout the world to the fullest extent of this Court's jurisdiction. This is a final judgment as to all claims asserted against Defendant in this action.

c) This Court shall retain jurisdiction for the purpose of making any further orders necessary or proper for the construction or modification of this Judgment, the enforcement thereof, and/or the punishment for any violations thereof. If Levi Strauss & Co. commences an action for enforcement of this Judgment, the prevailing party shall be awarded reasonable attorneys' fees and costs from the other party.

**IT IS SO ORDERED.**

Dated: May 15, 2019

_____

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California